IN THE UNITED STATES DISTRICT COURT FOR THE

WESTERN DISTRICT OF OKLAHOMA


ALVINA GAINES-HOOKS,            )
                                )
                Plaintiff,      )
                                )
                                )       CIV-12-01-M
v.                              )
                                )
MICHAEL J. ASTRUE,              )
  Commissioner of Social Security )
   Administration,              )
                                )
                Defendant.      )


## REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of

Defendant Commissioner denying her application for supplemental security income ("SSI")

benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 1382.  Defendant

has answered the Complaint and filed the administrative record (hereinafter TR___), and the

parties have briefed the issues.   The matter has been referred to the undersigned Magistrate

Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B).   For the following

reasons, it is recommended that the Commissioner's decision be reversed.

I. Background

Plaintiff protectively filed her application for SSI benefits on January 30, 2004.  (TR

53-56).   She alleged disability due to back problems, degenerative disc disease in her neck, depression, and schizophrenia. (TR 66, 88).  Plaintiff stated she had previously worked as a home day care provider and that she had completed the eleventh grade. (TR 61, 72).  Her earnings record is sparse. (TR 400-401).   Plaintiff was 34 years old when she filed her application.  Plaintiff has a long history of mental problems and substance abuse.  In a consultative psychiatric evaluation conducted with Plaintiff by Dr. Garton in August 2004, Dr. Garton noted that Plaintiff's mood was "euphoric and inappropriate to the situation," her thought process was "rapid . . . [with] some flight of ideas" and that it was difficult to keep Plaintiff focused on a topic because she jumped from one subject to the next. (TR 233).  Dr. Garton's diagnostic assessment was type II bipolar disorder with hypomania and a GAF score of 35.[1]  (TR 233-234).  Plaintiff told Dr. Garton she had a history of drug abuse but had not used drugs since 1995. (TR 231).  There are subsequent records of treatment of Plaintiff indicating that she relapsed beginning in November 2004. (TR 269).  She was still using illegal substances in January 2008. (TR 483).  In October 2008, she informed a treating physician that she had been "clean" for two weeks. (TR 421).  Plaintiff informed a treating mental health provider in December 2008 that she had stopped using illegal substances in September 2007. (TR 436).  In February 2009, Plaintiff reported to her treating mental health

---

[1]"The GAF is a subjective determination based on a scale of 100 to 1 of 'the clinician's judgment of the individual's overall level of functioning.'"  Langley v. Barnhart, 373 F.3d 1116, 1123 n. 3 (10th Cir. 2004)(quoting Am. Psychiatric Ass'n, Diagnostic & Statistical Manual of Mental Disorders (Text Revision 4th ed. 2000) at 32).  A GAF score of 39-45 indicates "[s]ome impairment in reality testing or communication . . . OR major impairment in several areas, such as work, school, family relations, judgment, thinking or mood (e.g., depressed man avoids friends, neglects family, and is unable to work . . . .)." Id. at 34.

clinic that she had been abstinent from drug and alcohol abuse for seven months. (TR 427).

However, she told a consultative examiner in March 2009 that she had been abstinent for

only 41 days. (TR 548).  Plaintiff was convicted of two counts of possession of controlled

substances in 2007 (TR 542) and she was still on supervised probation for one or both of

these offenses in September 2009. (TR 496).

The application was administratively denied. (TR 25-26).    Following an

administrative hearing conducted on March 2, 2006, before Administrative Law Judge

Parrish ("ALJ") (TR 308-33), the ALJ issued an unfavorable decision on August 24, 2006.

(TR 14-24).  In that decision, the ALJ found that Plaintiff had severe impairments due to

affective disorder, bipolar disorder, and history of cervical disc disease. (TR 16).  The ALJ

found that Plaintiff was disabled, "including the substance use disorder(s)." (TR 19).

However, "[i]f [Plaintiff] stopped the substance use," the ALJ found that she would have the

residual functional capacity ("RFC") to perform "a wide range of light work with occasional

bending forward at the waist, occasional bending at the knees to come to rest on [her] knees,

and occasional bending downward by bending [her] legs and spine." (TR 20).

Plaintiff appealed the Commissioner's decision.  In a report and recommendation

issued March 12, 2009, former United States Magistrate Judge Argo found that the ALJ's

conclusion as to materiality of Plaintiff's drug or alcohol abuse upon her physical

impairments was not supported by substantial evidence. (TR 364-387).  Judge Argo

recommended that the Commissioner's decision be reversed and remanded to the agency for

further administrative proceedings. (TR 387).

In an order entered April 15, 2009, United States District Judge Miles-LaGrange adopted the report and recommendation, reversed the Commissioner's decision, and remanded for further administrative proceedings consistent with the report and recommendation. (TR 388-389). Subsequently, the Social Security Administration's Appeals Council vacated the final decision of the Commissioner and remanded the case to an ALJ for further proceedings consistent with this Court's order. (TR 359).

A supplemental administrative hearing was conducted on December 1, 2009, before ALJ Parrish. (TR 555-583). At this hearing, Plaintiff appeared with counsel and testified, and a vocational expert ("VE") testified. Plaintiff also submitted medical evidence for the intervening period. (TR 407-536).

In a consultative physical examination conducted for the agency by Dr. Martinez on March 3, 2009, Plaintiff complained of degenerative disc disease for 22 years, primarily in her cervical spine, with pain and muscle spasms, back pain, and bipolar disorder for six to seven years with mood swings, rages, and chronic drug abuse, for which she took medications. (TR 547-549). Dr. Martinez conducted a physical examination and found that Plaintiff did not exhibit any abnormal findings except in her right wrist, which exhibited diminished flexion and extension and weak grip strength "status post fusion," and in her lumbar spine, which exhibited decreased flexion due to pain. (TR 549). Plaintiff told Dr. Martinez that she had been sober for 41 days and unemployed since 1999. (TR 548). Dr. Martinez noted that Plaintiff exhibited a "labile affect" and was "confrontational" several times during the interview.  (TR 548).

4

In a consultative psychological examination conducted for the agency on June 5, 2009, by Dr. Green, Plaintiff stated that she was disabled due to degenerative disc disease, asthma, a left eye injury causing fuzzy vision, paranoid schizophrenia, and type II bipolar disorder. (TR 541).  Plaintiff described a history of abuse of multiple illegal substances. (TR 541).  Plaintiff stated she had received mental health treatment from December 2008 until March 2009, with mood disorder and anti-depressant medications, but that she had voluntarily ceased mental health treatment because of a lack of transportation. (TR 541-542).  She stated she had been sober for ten months. (TR 543).

Dr. Green conducted a mental status evaluation and concluded that Plaintiff was impaired for "retaining new learning," that her fund of general knowledge and abstract reasoning were impaired, that she showed "inconsistent" concentration, numerical reasoning, and judgment, that she interacted "in a rather hostile manner," and that she could "retain and carry out simple and many detailed instructions though she had difficulty on more complex ones, particularly those involving literacy skills." (TR 544).  Dr. Green noted that during the evaluation Plaintiff exhibited agitated depression, irritability, and that she was a "marginally cooperative individual who was rude and disrespectful." (TR 543).  She also exhibited memory impairment. (TR 543).   Dr. Green's diagnostic impression was bipolar disorder, dysthymic disorder, pain disorder associated with both psychological factors and a general medical condition, cognitive disorder not otherwise specified, polysubstance abuse in early full remission, and antisocial personality disorder. (TR 545).

The ALJ issued a decision on August 26, 2010, in which the ALJ found that Plaintiff

had severe impairments due to degenerative joint disease, bipolar disorder, and "substance abuse."[2] (TR 349). Considering Plaintiff's bipolar and "substance abuse" impairments, the ALJ found that these impairments had resulted in functional limitations, including mild to moderate restrictions in daily living activities, moderate difficulties in maintaining social functioning, moderate to marked difficulties in maintaining concentration, persistence, or pace, and three or more episodes of decompensation of extended duration. (TR 350).

The ALJ found that Plaintiff had the RFC to perform the exertional requirements of light work, except that she would have a "20 percent reduction in her concentration capability" and ""[a]dditionally [Plaintiff's] combination of impairments results in such limitation that she would be unable to perform work activities on a regular and continuing basis for eight hours daily and five days weekly or an equivalent work schedule as referenced in Social Security Ruling 96-9p." (TR 352).

The ALJ found that "there is medical evidence of [drug or alcohol abuse]" and that when the effects of Plaintiff's substance abuse were discounted she had the RFC to perform light, unskilled work that allowed her to work "in relative isolation with limited contact with peers, supervisors, and the general public." (TR 353). Expressing his reliance on the VE's testimony concerning the availability of work for an individual with this RFC for work, the ALJ found that Plaintiff could not perform her previous jobs as a daycare provider or meat

---

[2]As there is no medically-determinable disorder identified as "substance abuse," the ALJ apparently intended to identify a substance addiction disorder as one of Plaintiff's severe impairments. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.09 (recognizing substance addiction disorder as medically-determinable impairment).

packer but she could perform other work available in the national economy, including the

jobs of remnant sorter, merchandise marker, and collator. (TR 353-354).  Based on these

findings, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social

Security from January 30, 2004, through the date of the decision.  (TR 354-356).

The Appeals Council declined Plaintiff's request to review this decision (TR 333-

335), and Plaintiff now seeks judicial review of the final decision of the Commissioner

embodied in the ALJ's determination.

II. Standard of Review

Plaintiff now seeks judicial review of the final decision of the Defendant

Commissioner embodied in the ALJ's determination.  Judicial review of a decision by the

Commissioner is limited to a determination of whether the Commissioner's factual findings

are supported by substantial evidence in the record and whether the correct legal standards

were applied.  Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart,

331 F.3d 758, 760 (10th Cir. 2003).  The "determination of whether the ALJ's ruling is

supported by substantial evidence must be based upon the record taken as a whole.

Consequently, [the Court must] remain mindful that evidence is not substantial if it is

overwhelmed by other evidence in the record." Wall v. Astrue, 561 F.3d 1048, 1052 (10th

Cir. 2009)(citations, internal quotation marks, and brackets omitted).

The Social Security Act defines disability as the "inability to engage in any substantial

gainful activity by reason of any medically determinable physical or mental impairment

which can be expected to result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months." 42 U.S.C. § 416(i). The Commissioner follows a five-step sequential evaluation procedure to determine whether a claimant is disabled. Doyal, 331 F.3d at 760. In the first four steps of this process, the claimant has the burden of establishing a prima facie case of disability. Id. In this case, Plaintiff's claim was denied at step five. At the fifth and final step of the requisite sequential evaluation process, the burden shifts to the Commissioner "to show that the claimant retains sufficient [residual functional capacity] . . . to perform work in the national economy, given her age, education and work experience." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007)(internal quotation and citation omitted).

When there is evidence of drug or alcohol abuse ("DAA"), as there is in the Plaintiff's administrative record, the ALJ must employ an additional step in the evaluation of such a claim. Under the Social Security Act, "[a]n individual shall not be considered to be disabled .... if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C. §§423(d)(2)(C), 1382c(a)(3)(J). When an ALJ determines that a claimant is disabled but there is medical evidence in the record of drug addiction or alcoholism, the ALJ must determine whether that substance abuse is a "contributing factor material to the determination of disability." 20 C.F.R. § 416.935(a).

When determining whether DAA is material to a finding of disability, an ALJ must determine whether the claimant would still be found disabled if the claimant stopped using drugs and/or alcohol. 20 C.F.R. § 416.935(b)(1). Thus, the ALJ must evaluate the claimant's

physical and/or mental impairments, determine which of these impairments would remain if the claimant stopped using drugs and/or alcohol, and then determine whether any or all of the remaining impairments would be disabling. 20 C.F.R. § 416.935(b)(2).  If the ALJ finds that a claimant's remaining impairments would not be disabling, then the ALJ must find that the claimant's drug and/or alcohol abuse "is a contributing factor material to the determination of disability" and find the claimant is not disabled. 20 C.F.R. §416.935(b)(2)(i).   In contrast, DAA is not a "contributing factor material to the determination of disability" if the claimant's impairments would still be disabling even if the person stopped using drugs or alcohol. 20 C.F.R. § 416.935(b)(2)(ii).

III. <u>Analysis</u>

Plaintiff contends that the ALJ's finding of materiality of DAA is not supported by substantial evidence in the record.  Plaintiff first points to the ALJ's findings with respect to Plaintiff's ability to concentrate.  Plaintiff asserts that the ALJ made the same findings of diminished concentration both considering Plaintiff's substance abuse and absent Plaintiff's substance abuse and that the ALJ failed to explain this inconsistency.

In the ALJ's decision, the ALJ found Plaintiff's ability to concentrate was diminished "20 percent" considering all of her impairments, including her substance addiction. (TR 352). The ALJ further found that Plaintiff's impairments, including substance addiction, precluded her from working "on a regular and continuing basis" in a full-time or equivalent work schedule. (TR 352).

The ALJ then considered whether Plaintiff's DAA was a "contributing material

factor" to her disability. 42 U.S.C. § 423(d)(2)(C).  The ALJ found that if she stopped abusing substances she could perform light, unskilled work where she could work "in relative isolation with limited contact with peers, supervisors, and the general public." (TR 353). With respect to her ability to concentrate, the ALJ found that in the absence of DAA Plaintiff would be "able to sustain concentration necessary for unskilled work." (TR 353).

In an internal agency guideline adopted after the Social Security Act was amended, the agency indicated that in instances in which a claimant has both mental impairments and there is evidence of DAA an administrative factfinder must look closely at periods of abstinence to determine whether the claimant's disability continued in the absence of DAA. In Salazar v. Barnhart, 468 F.3d 615 (10th Cir. 2006), the Tenth Circuit Court of Appeals explained that this guideline, sent to agency employees in the form of a teletype, "stresses the need for careful examination of periods of abstinence and also directs that if the effects of a claimant's mental impairments cannot be separated from the effects of substance abuse, the DAA is *not* a contributing factor material to the disability determination." Id. at 623. Moreover, as the court explained, "the Commissioner's teletype further directs that where a medical or psychological examiner cannot project what limitations would remain if the claimant stopped using drugs or alcohol, the disability examiner should find that DAA is *not* a contributing factor material to the disability determination." Id.   Thus, if it is not possible to separate the mental impairment(s) from the substance addiction, the agency instructed that a "finding of 'not material' would be appropriate." Id.

The ALJ did not mention the teletype, but it is clear from the ALJ's decision that he

followed its guidance. Thus, the Court must determine whether there is substantial evidence to support the ALJ's conclusion that Plaintiff would not be disabled in the absence of her substance abuse. Id. at 624. In this case, there is not substantial evidence to support the ALJ's conclusion that Plaintiff would not be disabled in the absence of DAA, and as a result the Commissioner's decision should be reversed.

Earlier in the decision, the ALJ found that Plaintiff's bipolar and substance abuse impairments had resulted in "moderate to marked" difficulties in maintaining concentration, persistence or pace and that she had repeated episodes of decompensation of extended duration. (TR 350). The ALJ did not, however, rely on the agency's Listing of Impairments to determine that Plaintiff was disabled considering all of her impairments. To make this finding, the ALJ explicitly relied on the VE's testimony in response to hypothetical questioning. The ALJ stated that he had "called upon the vocational expert to name jobs the claimant can perform given her particular [RFC]" and that the VE "testified that assuming Ms. Gaines's specific work restrictions, there are no jobs to which she can make a vocational adjustment. Based on the testimony of the [VE], a finding of 'disabled' may be reached within the framework of the [relevant] rule." (TR 352).

During the second administrative hearing, the ALJ asked the VE to consider a hypothetical individual with Plaintiff's vocational factors who could perform light work but "because of the side effects of medications along with pain and weakness in the joints would be unable to perform work activities on a regular and continuing basis eight hours a day, five days a week, and would possess an approximate 20 percent reduction in concentration

capabilities." (TR 581-582).  The VE responded that no jobs would be available for such an individual. (TR 582).

Because the ALJ specifically relied on the VE's testimony at the second hearing in reaching the disability determination, the ALJ's disability finding was based on "the side effects of medications," "pain and weakness in the joints," and "an approximate 20 percent reduction in concentration" ability. (TR 581-582). The ALJ did not relate either "the side effects of medications" or "pain and weakness in the joints" to Plaintiff's substance abuse. Nor did the ALJ explain how Plaintiff's diminished ability to concentrate related to her substance abuse.   Nevertheless, the ALJ subsequently found that when the effects of Plaintiff's substance abuse were discounted she was "able to sustain concentration necessary for unskilled work." (TR 353).

The ALJ's belief that Plaintiff's ability to work improved in the absence of her DAA is based on the ALJ's finding that:

> When the claimant has been abusing DAA and/or otherwise noncompliant with treatment, she has experienced symptomatology that includes tearfulness, sleep disturbance, difficulty concentrating or thinking, hallucinations, pressures of speech, flight of ideas, and loss of interest in daily activities. During times when she is compliant with treatment and abstinent from DAA, her mental symptomatology is stable and demonstrated only by some memory impairment, irritability, and difficulty concentrating or thinking.

(TR 349-350).  This reasoning, which misreads the record, does not support the ALJ's materiality finding.

The ALJ specifically found that in the absence of Plaintiff's DAA her ability to

concentrate improved to the point that she could perform unskilled work. This finding will be upheld only if there is evidence in the record indicating that Plaintiff's mental impairments improved after a sustained period of abstinence.

The psychological examiner, Dr. Green, evaluated Plaintiff in June 2009, after Plaintiff had a sustained period of abstinence from DAA (she reported abstinence "for ten months as of 6/22/09"). (TR 543). Dr. Green indicated that Plaintiff was able to "retain and carry out simple and many detailed instructions" but not "more complex ones . . . ." (TR 544). The ALJ apparently focused on this portion of Dr. Green's assessment of Plaintiff's mental status in finding that she could perform unskilled work, but the ALJ's rationale ignores Dr. Green's assessment that Plaintiff exhibited "[d]ifficulty with concentration" and "inefficient functioning" in several cognitive areas, including concentration, during the mental status evaluation. (TR 544). An ability to perform simple instructions or a simple work routine does not necessarily mean that the individual has the ability to concentrate on that routine for an extended period of time. See O'Connor-Spinner v. Astrue, 627 F.3d 614, 620 (7th Cir. 2010)("The ability to stick with a given task over a sustained period is not the same as the ability to learn how to do tasks of a given complexity."). Dr. Green's report of his evaluation of Plaintiff did not clearly show or even provide evidence from which it could be inferred that her ability to concentrate improved despite her abstinence. Thus, this evidence does not support the ALJ's materiality finding.

Three months later, in September 2009, Plaintiff was evaluated by a counselor at her treating mental health clinic. In this evaluation, the counselor noted that Plaintiff was

diagnosed with type II bipolar disorder, cocaine dependence in sustained full remission, and opioid abuse in sustained full remission. (TR 492). The counselor's diagnostic evaluation of Plaintiff included a global assessment of functioning ("GAF") score of 39, a rating that is indicative of an inability to work. (TR 492-493). According to the counselor's report of this evaluation, Plaintiff stated she had been abstinent since September 2008 and she was "experiencing mood swings, irritability, depression, difficulties with sleep, visual hallucinations and auditory hallucinations." (TR 503). This evidence does not support the ALJ's materiality finding.

The ALJ stated in the decision that "[w]hen the claimant is compliant and abstinent, she is observed to be outgoing, happy, friendly, cheerful, and able to communicate well." (TR 351). This statement simply misreads the record, which reflects that Plaintiff's mental impairments caused severe symptoms, including auditory and visual hallucinations (TR 503), irritability, and "agitated depression" (TR 543), despite her abstinence from DAA. There is one instance in the record in which Plaintiff reported to a treating clinic she was "doing well with her medications" and had been sober for several months in February 2009. (TR 427). However, subsequent treatment records indicate that Plaintiff's mental impairments did not persistently improve despite her continuing abstinence.

Looking beyond the medical evidence, the ALJ pointed to Plaintiff's subjective statements to Dr. Green concerning her usual daily activities. Essentially, she stated she was attending weekly AA meetings, attending church once a week, and performing household chores with the assistance of her two children. (TR 542-543). The ALJ also pointed to

14

evidence in the record that Plaintiff had been attending classes in order to earn a GED. (TR 536). According to her teacher at an adult learning center, Plaintiff had been attending some classes two evenings a week for several months and was "making progress" toward taking her GED. (TR 536). Plaintiff testified at the supplemental hearing that she normally slept until 3 p.m. and that she must attend AA meetings in order to live in the apartment she shares with her two children. (TR 573-575). She stated that side effects from her medications were the cause of her inability to stay up and focus during the day. (TR 577). None of this subjective evidence indicates the ability to perform the requirements of sustained employment even at an unskilled level, given the medical evidence of Plaintiff's concentration and other cognitive impairments as found by Dr. Green.

Particularly in light of the ALJ's finding that Plaintiff's bipolar and substance addiction impairments had resulted in moderate to marked difficulties in maintaining concentration, persistence, or pace, and three or more episodes of decompensation of extended duration (TR 350), and the medical evidence showing her concentration abilities continued to be limited during a period of abstinence, there is not substantial evidence in the record to support the ALJ's finding that Plaintiff's DAA was material to the finding of disability. Accordingly, the Commissioner's decision should be reversed.

In this case, Plaintiff filed her application for benefits in January 2004, and a previous decision by the Commissioner was reversed and remanded by this Court for further administrative proceedings. The length of time that a matter has been pending is a factor to be considered in determining whether a court should remand or award benefits. Salazar, 468

F.3d at 626.  If a remand for additional administrative proceedings would not serve any useful purpose, a court may in its discretion award benefits.  See id. (awarding benefits were "a remand for additional fact finding and a correct application of the law would serve no useful purpose").  In this case, the Court should award benefits in view of the more than eight year period of time that the case has been pending and the absence of any useful purpose to be served for further administrative proceedings.


RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter REVERSING the decision of the Commissioner to deny Plaintiff's applications for benefits and REMANDING for an award of benefits.  The parties are advised of their respective right to file an objection to this Report and Recommendation with the Clerk of this Court on or before    December 18th, 2012, in accordance with 28 U.S.C. § 636 and Fed. R. Civ. P. 72.  The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

16

ENTERED this _____28th_____ day of _____November_____, 2012.

GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE